IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:99CV237-H

|  |  |  |
|---|---|---|
| IN RE: THE FIRST UNION CORP. SECURITIES LITIGATION, | ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |

**THIS MATTER** is before the Court on the "Defendants' Motion to Dismiss Plaintiffs' Third Consolidated and Amended Class Action Complaint" (document #95) and "Memorandum ... in Support ..." (document #96), both filed February 3, 2004; and the Plaintiffs' "Memorandum ... in Opposition ..." (document #103) filed April 2, 2004. On May 10, 2004, the Defendants filed their "Reply ..." (document #106).

On March 31, 2005, following the untimely death of the judge to whom this case was initially assigned (the Honorable H. Brent McKnight), this case was re-assigned to the undersigned.

On August 8, 2005, following receipt of a letter from Defendants' counsel stating that in the interim "significant cases [concerning the issues in this case] ha[d] been decided," and requesting that the Court allow further briefing of the Defendants' motion, the undersigned granted the parties leave to file additional briefs in support of or in opposition to the pending Motion to Dismiss. See "Order" (document #114).

Accordingly, on September 23, 2005, the Defendants filed their "Supplemental Brief in Support of ... Motion to Dismiss ... " (document #116); and on November 11, 2005, the Plaintiffs filed their "Supplemental Brief in Opposition ..." (document #120).

On January 5, 2006, the Defendants filed their "Supplemental Reply Brief ..." (document

#123).

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and the Defendants' Motion is ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Defendants' Motion to Dismiss Plaintiffs' Third Consolidated and Amended Class Action Complaint for the reasons discussed below.

## I. <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

As Judge McKnight has previously explained the procedural history:

> Twelve class action suits were filed [by First Union shareholders] against Defendant First Union and its directors ... [and] were consolidated [under the caption stated above].[1] The complaint and [first] amended complaint[] allege[d] securities fraud under Section 10(b) of the Exchange Act consisting of: (1) misrepresentation by officers in statements and omissions regarding the effects on earnings of First Union's acquisitions; and (2) violations of GAAP (Generally Acceptable Accounting Procedures) as to certain losses.
> More specifically, regarding misrepresentations in statements and omissions, in the original and First Amended Complaint, Plaintiffs alleged that during the class period of August 14, 1998, to May 25, 1999, First Union's stock was artificially inflated because First Union misrepresented the effects of integrating recent acquisitions into First Union's corporate structure. While the allegations primarily concerned the August 1998 acquisition of CoreStates, a rival bank which comprised one-third of First Union's total value post-acquisition, they also alluded to First Union's acquisition of the Money Store.[2]
> After this Court dismissed the Amended Complaint, Plaintiffs moved for reconsideration of the Order dismissing the Complaint and, alternatively, for leave to amend the Complaint. This Court granted the motion to amend and denied the motion for reconsideration as moot.

---

[1] The lawsuits were filed between June 8 and September 13, 1999, and on August 23, 1999, Judge McKnight consolidated the cases then pending and the others filed thereafter. <u>See</u> "Order" (document #28).

[2] For a more complete statement of the allegations in the Complaint and Consolidated and Class Action Complaint, see <u>In Re First Union Securities Corp. Litigation</u>, 128 F. Supp. 2d 871, 883-84 (W.D.N.C. 2001) (Plaintiffs failed to allege a material misstatement or omission or that any such misstatement or omission was made by Defendants with actual knowledge that it was false or misleading).

> Plaintiffs then filed a Second Amended Complaint deleting CoreStates allegations which this Court had found to be insufficiently plead under the Private Securities Litigation Reform Act ("Reform Act"). The Second Amended Complaint focuses on the Money Store acquisition and the resulting ... write-off [and] extends the class period by eighteen months.

"Order" at 1-2, entered September 16, 2002 (document #84) (granting in part and denying part "Defendants' Motion to Dismiss Second Consolidated and Amended Class Action Complaint").

In the same Order, Judge McKnight held, without further elaboration, that the misstatements and omissions alleged in paragraphs 101, 122, 133, 134, 137, 138, 141, and 143-147 of the Second Consolidated and Amended Class Action Complaint "related back" to the initial Complaint and were, accordingly, not barred by the applicable statute of limitations. Id. at 11. Further, Judge McKnight granted the Plaintiffs leave to file a third amended complaint, in which they could plead those allegations, as well as any other "fact allegations which amplif[ied] or clarif[ied] the [same] alleged misstatements or omissions." Id.

On October 15, 2002, the Plaintiffs filed their "Third Consolidated and Amended Class Action Complaint" (document #85) ("Third Amended Complaint"), stating claims against Defendants First Union Corporation ("First Union") and the members of its Board of Directors for securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78, et seq., ("the Securities Act"), as well as a secondary claim against the Board of Directors as "controlling persons" under Section 20(a) of the Securities Act, and contending generally that as a result of the Defendants' misfeasance, they suffered losses on First Union stock that they had purchased.

Relevant to the subject Motion to Dismiss, First Union acquired the Money Store, a "subprime" home mortgage lender in June 1998, operated it for two years, and closed the Money

3

Store in June 2000 by taking a $2.8 billion dollar writeoff.

According to the Plaintiffs' most recent brief, the "crux of the [Third] Amended Complaint" are issues relating to the Money Store acquisition: "integration ... and gain-on-sale accounting." Document #120 at 8. Specifically, the Plaintiffs allege that Defendants "made materially false and misleading statements regarding [First Union's] progress in integrating recent acquisitions ... [and] blinded themselves to critical information about the Money Store's fundamental business ... that gain-on-sale accounting would not be available going forward, which would severely impact the Money Store's business." The Plaintiffs further allege that these misstatements had the effect of artificially inflating First Union's stock price on and after March 4, 1998, when the proposed Money Store acquisition apparently was announced, and prior to the time the Plaintiffs purchased their stock. Id. at 8-9.

As the Defendants point out in their briefs, however, the Plaintiffs do not allege that the Money Store's use of gain-on-sale accounting was fraudulent, and gain-on-sale accounting was then, and presently is, permitted in the "subprime" mortgage industry under Generally Accepted Accounting Procedures ("GAAP").

The Plaintiffs further allege that they suffered losses on their stock as the result of two revised earnings forecasts that First Union made in 1999, after each of which First Union's stock price declined.

On January 26, 1999, First Union announced that it "would eliminate the use of gain-on-sale accounting ... [that] would decrease 1999 earnings by $.08 [eight cents] to $.12 [twelve cents] per share." Id. at 9. After this announcement, First Union's stock price dropped from the previous day's close of $57 1/16 to $52 3/16, a difference of $4.88 per share.

4

On May 25, 1999, First Union again revised its 1999 earnings forecast from $4.00 per share to between $3.40 and $3.50 per share and attributed the reduction to "a year of transition, consolidation and strategic focus," in which the company was "faced with overcoming the impact of substantial, 1998 unusual non-core earnings items, major acquisition integration[,] and acceleration of spending for major new strategic initiatives as we deploy a new business model." By the end of the day, First Union's stock price had dropped to $45 5/8 from the previous day's close of $49 15/16, a difference of $4 5/16. Overall, the stock price on May 25, 1999 was $6 3/8 less than the $52 price at the beginning of the putative class period on March 4, 1998.

Concerning loss causation, the issue that is presented in the present Motion to Dismiss, although the Plaintiffs now contend generally that these announcements caused their losses, they do not allege that either of these announcements revealed the truth about the Defendants' alleged previous fraudulent misstatements. Rather, they allege that the "truth about The Money Store was revealed" on June 26, 2000, when First Union announced that it would discontinue all home equity lending activities at the Money Store and take an estimated $2.8 billion in restructuring and other charges, which included writing off $2.2 billion for the Money Store acquisition. It is undisputed that rather than decline, however, First Union's stock price rose six cents ($.06) per share that day, and within three weeks, had risen an additional thirty-seven-and-one-half cents ($.375) per share.

On February 3, 2004, the Defendants filed the subject Motion to Dismiss the Third Amended Complaint, which as refined in the parties' most recent, supplemental briefs presents two related issues: (1) whether the Plaintiffs must plead causation, the fourth element of their Section 10(b) claim, discussed below, with particularity, and (2) whether they have sufficiently pled that either of the two revised earnings forecasts discussed above caused the losses for which the Plaintiffs are

5

seeking to recover damages.

The Defendants' Motion to Dismiss has been fully briefed as set forth above and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996)(en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")(internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs.,

6

Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. Section 10(b) Claim for Securities Fraud

The basic elements of a Section 10(b) claim are that (1) the defendant made a material misrepresentation or omission (2) with scienter (3) in connection with the purchase or sale of a security (4) that caused (5) an economic loss to the plaintiff. Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1631 (2005). Accord Miller v. Asensio & Co., 364 F.3d 223, 227 (4th Cir. 2004); and In Re First Union Securities Corp. Litigation, 128 F. Supp. 2d 871, 883 (W.D.N.C. 2001) (concerning CoreStates acquisition, Plaintiffs failed to allege a material misstatement or omission or that any such misstatement or omission was made by Defendants with actual knowledge that it was false or misleading).

In a securities fraud context, causation includes "two necessary elements: actual cause ('transaction causation') and proximate cause ('loss causation')." In re Daou Sys., Inc., Sec. Litig., 411 F.3d 1006, 1025 (9th Cir. 2005). See also Dura, 125 S. Ct. at 1631; and Gasner v. Bd. of Supervisors, 103 F.3d 351, 360 (4th Cir. 1996). Transaction causation, also called reliance, concerns the causal relationship between the defendant's misrepresentation and the plaintiffs' purchase. Basic Inc. v. Levinson, 485 U.S. 224, 242 (1988). Loss causation, on the other hand, concerns the "causal connection between the material misrepresentation and the [plaintiff's] loss." Dura, 125 S. Ct. at 1631 (emphasis added). See also Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005) (plaintiffs "must allege ... that the subject of the fraudulent statement or omission was the cause of the actual loss suffered").

7

Concerning "loss causation," plaintiffs "shall have the burden of proving that the act or omission of the defendant alleged to violate [Section 10(b)] caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). In its recent opinion in Dura, the Supreme Court held that the statute "makes clear Congress' intent to permit private securities fraud actions ... where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss." 125 S. Ct. at 1633.

In other words, in order to survive a motion to dismiss, securities fraud plaintiffs must allege that the misrepresentation not only induced them to purchase the security at an inflated price, but also caused the security's subsequent decline in value. Accord Id.; Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 198 (2d Cir. 2003) ("the very question that the loss causation allegation must answer ... [is] why [plaintiffs] lost money on the purchase," rather than only alleging "why plaintiff[s] purchased" the stock); and Robbins v. Koger Props., Inc., 116 F.3d 1441, 1447-48 (11th Cir. 1997).

In Dura, the Supreme Court considered the elements of loss causation and damages, and held that plaintiffs must allege that the defendant's "share price fell significantly after the truth [about the matter formerly misstated] became known" to the market. 125 S. Ct. at 1634. The Dura plaintiffs alleged generally that they had purchased securities at prices artificially inflated by misrepresentations and suffered damages thereby. Id. at 1630. The Court held those allegations were inadequate to plead loss causation, because "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." Id. at 1631. Rather, in addition to alleging that they paid an "artificially inflated purchase price," securities fraud plaintiffs must allege (1) the "relevant economic loss" they suffered, as well as (2) the "causal connection between that loss and

8

the [defendant's] misrepresentation." Id. at 1634. Simply alleging that the price of the stock declined after plaintiffs purchased it at an allegedly inflated price is not enough to meet this requirement, because a "lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." Id. at 1632. Accordingly, plaintiffs must allege why a decline in price was actually caused by the fraud they claim, rather than by other factors, by specifically linking the price drop to "the truth mak[ing] its way into the market place." Id.

Additionally, the Court has previously held and, consequently, it is the law of this case, that "[b]ecause § 10(b) claims are fraud claims, Plaintiffs must further satisfy the pleading requirements imposed by Fed.R.Civ.Pro. 9(b) ... [which] requires that plaintiffs plead all of the elements of fraud with particularity." In Re First Union Securities Corp. Litigation, 128 F. Supp. 2d at 88. Accord In Re Criimi Mae, 94 F.Supp.2d 652, 657 (D.Md. 2000) (affirming dismissal where plaintiffs failed to plead elements of Section 10(b) with particularity); In re Medimmune, Inc. Sec. Litig., 873 F.Supp. 953, 960 (D.Md. 1995) (applying Rule 9(b) to Section 10(b) claim); and Apple v. Prudential-Bache, 820 F.Supp. 984, 986 (W.D.N.C. 1992) (affirming dismissal where plaintiffs failed to plead elements of Section 10(b) with particularity). Moreover, "[r]igorous application of Rule 9(b) ... is especially important in securities fraud cases, where the potential for 'strike suits' is serious." In Re First Union Securities Corp. Litigation, 128 F. Supp. 2d at 884, quoting In re Medimmune, Inc. Sec. Litig., 873 F.Supp. at 960.

Although the Plaintiffs concede that the particularity requirement applies to the other elements of their Section 10(b) claim, they contend that because the causation element concerns the

9

losses caused by the allegedly misleading statements, rather than the statements themselves, simple notice pleading should apply to that single element.

Because the scant allegations in Dura failed to satisfy even "simple" notice pleading requirements, the Supreme Court expressly declined to consider whether loss causation must be pled with particularity. 125 S. Ct. at 1634. There is also no Fourth Circuit authority directly on point; however, circuit courts that have considered the issue have held that the particularity requirement applies to the loss causation element of a Section 10(b) claim. See, e.g. Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005); and GSC Partners CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004).

In addition, the Fourth Circuit has held that every element of a common law fraud action must be pled with particularity, Learning Works, Inc. v. Learning Annex, Inc., 830 F.2d 541, 546 (4th Cir. 1987), a persuasive analogy given that in Dura, the Supreme Court looked to common law fraud to define the loss causation element of a Section 10(b) securities fraud claim. 125 S. Ct. at 1632.

Applying these legal principles to the facts alleged in this case which are taken as true at this point in the proceedings, the Defendants have failed to plead a viable claim under Section 10(b). Assuming for purposes of this motion only that the Plaintiffs have adequately pled the other elements of their securities fraud claim, they have failed to establish causation for the losses that they suffered on First Union shares they purchased, that is, that the subsequent decrease in the First Union stock price was caused by the Defendants' misrepresentations concerning the Money Store and gain-on-sale accounting. Accord Dura, 125 S. Ct. at 1633 (securities fraud plaintiffs must allege that misrepresentation not only induced them to purchase the security at an inflated price, but also caused

security's subsequent decline in value); and Emergent Capital Inv. Mgmt., LLC, 343 F.3d at 198 ("the very question that the loss causation allegation must answer ... [is] why [plaintiffs] lost money on the purchase," rather than only alleging "why plaintiff[s] purchased" the stock).

To the contrary, applying the particularity pleading requirement to loss causation, the specific allegations of the Third Amended Complaint contradict the Plaintiffs' otherwise generalized allegations that they suffered an economic loss as a result of the alleged misrepresentations. The Plaintiffs clearly state that the stock price decline was caused by two public statements, the January and May 1999 revised earnings estimates, after which the First Union share price did fall, but they equally clearly allege that the Defendants did not disclose the "truth" about the Money Store and gain-on-sale accounting until June 26, 2000. See Dura, 125 S. Ct. at 1634 (plaintiffs must allege that the defendant's "share price fell significantly after the truth became known" to the market) (emphasis added).

In short, where the Complaint taken as true does not allege facts sufficient to support a claim for Section 10(b) securities fraud, the Defendants' Motion to Dismiss that claim must and will be granted.

### C. Section 20(a) Claim Against "Controlling Persons"

Having failed to adequately plead an underlying securities violation, the Plaintiffs also cannot maintain their secondary Section 20(a) claim against the Defendant Directors, which also will be dismissed. Accord 15 U.S.C. § 78t(a) ("controlling persons" may be liable for securities fraud in their individual capacities); In re FAC Realty Sec. Litig., 990 F. Supp. 416, 423 (1997); and In re Medimmune, Inc. Sec. Litig., 873 F.Supp. at 964.

Moreover, the Plaintiffs having been unable to state any viable claim, despite being allowed to file three Amended Complaints, no further leave to amend will be granted, and the dismissal as to both claims will be with prejudice. Accord Miller v. Champion Enterprises Inc., 346 F.3d 660, 690-91 (6th Cir. 2003) (affirming district court's decision to deny "repeated" amendments to securities fraud complaint, and holding that allowing multiple amendments would "frustrat[e]" the purposes of the Securities Act); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332-33 (3d Cir. 2002) (purpose of Securities Act would be "thwarted" by repeated amendments to complaint); Smith v. Circuit City Stores, Inc., 286 F. Supp. 2d 707, 722-23 (E.D.Va. 2003) (Securities Act sets a high pleading standard which "if not met mandates dismissal"); and In re Cybershop Sec. Litig., 189 F. Supp. 2d 214, 236-37 (D.N.J. 2002).

## II. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The "Defendants' Motion to Dismiss Plaintiffs' Third Consolidated and Amended Class Action Complaint" (document #95) is **GRANTED**, that is, the Third Consolidated and Amended Class Action Complaint (document #85) is **DISMISSED WITH PREJUDICE**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

**Signed: January 20, 2006**

*[signature: Carl Horn, III]*

Carl Horn, III
United States Magistrate Judge